The PEOPLE of State of New York,

v.

Sam BERGER, Defendant.

PEOPLE of State of New York,

v.

Charles DUKE, also known as Charles Kaminetsky, Defendant.

PEOPLE of State of New York,

v.

Harry STEINMAN, Defendant.

PEOPLE of State of New York,

v.

Harry NEYER, Defendant.

United States District Court
S. D. New York.

March 18, 1965.

Frank S. Hogan, Dist. Atty. of State of New York, New York City, David A. Goldstein, Asst. Dist. Atty., of counsel, for the People.

Gilbert S. Rosenthal, New York City, for defendant Sam Berger.

Albert J. Krieger, New York City, for defendants Charles Duke, a/k/a Charles Kaminetsky, and Harry Steinman.

Moses L. Kove, New York City, for defendant Harry Neyer. Ernst H. Rosenberger, New York City, of counsel.

LEVET, District Judge.

Motions by the District Attorney of New York County are made in each of the four above-entitled proceedings to remand each to the State Courts.

The questions primarily involved herein relate to the alleged use of electronic eavesdropping devices and the alleged impropriety of the State's use of information thereby obtained in prosecuting the above-named defendants in the State Courts. Thus, the development of science

in that field and its consequential use in the detection of crime and, on the other hand, the development of the law in the protection of a defendant's rights meet.

## BACKGROUND OF THESE PROCEEDINGS

### THE INDICTMENTS AND PLEAS

The defendant *Sam Berger* was indicted by the Grand Jury of the County of New York on May 17, 1963, accused of committing the crime of perjury in the first degree as set forth in six (6) counts.

The defendant *Charles Duke*, also known as Charles Kaminetsky, was indicted by the Grand Jury of the County of New York on May 17, 1963, accused of committing the crime of perjury in the first degree as set forth in four (4) counts.

The defendant *Harry Steinman* was indicted by the Grand Jury of the County of New York on May 8, 1963, accused of committing the crime of perjury in the first degree as set forth in eleven (11) counts.

The defendant *Harry Neyer* was indicted by the Grand Jury of the County of New York on May 1, 1963 for the crime of bribing a public official and on June 25, 1963 by separate indictment charging him with the crime of conspiracy to bribe a public official.

These indictments arose out of a still-continuing Grand Jury investigation of the administration of the New York State Liquor Authority.

Pleas of not guilty were entered by each of the above-named defendants in the State Court.

### PRELIMINARY MOTIONS IN THE STATE COURT

Each of the above-named defendants moved for certain relief in the State Court.

## SAM BERGER

On June 2, 1964, this defendant moved:

(1) For inspection of the Grand Jury testimony or, alternatively, dismissal of the indictment;

(2) For discovery and inspection relating to alleged electronic eavesdropping and wiretapping;

(3) For a bill of particulars.

On July 31, 1964, all of the above motions were denied with the exception of granting to the defendant the right to obtain a transcript of his own testimony before the Grand Jury and a bill of particulars as to the date and place of certain discussions.

## CHARLES DUKE, also known as CHARLES KAMINETSKY

On June 2, 1964, the defendant moved for:

(1) Inspection of the Grand Jury minutes;

(2) Inspection of any ex parte orders and supporting affidavits authorizing electronic eavesdropping;

(3) Suppression of evidence allegedly obtained by electronic eavesdropping.

All of the above motions were denied as being premature with the exception of granting to the defendant the right to obtain a transcript of his own testimony before the Grand Jury.

## HARRY STEINMAN

On June 3, 1964, this defendant moved for:

(1) Suppression of alleged illegally-obtained evidence from electronic eavesdropping;

(2) Inspection of any court orders and supporting affidavits authorizing electronic eavesdropping;

(3) Inspection of Grand Jury testimony.

These motions were subsequently denied with the exception of granting to the defendant the right to obtain a transcript of his own testimony before the Grand Jury.

## HARRY NEYER

On April 22, 1962, this defendant moved for:

(1) Suppression of alleged illegally-obtained evidence from electronic eavesdropping;

(2) Inspection of Grand Jury minutes or, in the alternative, dismissal of the indictments.

On July 31, 1964, the motion to inspect the Grand Jury minutes was denied and the motion to suppress was denied on the ground that it was prematurely made and should properly be brought at the trial.

## PETITIONS FOR REMOVAL
## SAM BERGER

On or about December 3, 1964, defendant Sam Berger filed with the Clerk of this court a petition for removal in which it was stated that he seeks removal of the said prosecution to this court pursuant to Title 28 U.S.C. § 1443, alleging the following reasons:

(a) The civil rights of petitioner have been violated in that the District Attorney's Office of the County of New York has invaded his privacy, searched unreasonably, searched generally in a hunt for evidence, trespassed on his premises, trespassed upon premises other than those of the petitioner, to which petitioner had right of entry and the District Attorney had not, and has, therefore, violated petitioner's rights under the Fourth and Fifth Amendments of the United States Constitution;

(b) The evidence which the District Attorney's Office used to obtain the indictment against petitioner was derived from tainted sources;

(c) Upon information and belief, as a result of leads obtained through the illegal eavesdropping, the District Attorney procured the installation of an eavesdropping device in the office premises of petitioner and that conversations in which petitioner participated and conversations in which petitioner and his business guests or invitees participated were overheard.

The petitions of Charles Duke, also known as Charles Kaminetsky, Harry Steinman and Harry Neyer are similar in content.

## FACTS

It is difficult for this court from the papers submitted to ascertain the exact facts which are involved in connection with the alleged use of the eavesdropping section of the New York State Code of Criminal Procedure, § 813–a. However, the petitions for removal to this court plus the affidavits submitted upon these motions to remand appear to present the following facts:

## HARRY NEYER

In defendant Harry Neyer's petition for removal to this court, by his attorney, Moses L. Kove, the attorney alleges that in the prosecution of one Melvin Osterman and one Ralph Berger, in statements to the jury, "colloquy and evidence adduced in those proceedings, it developed that the District Attorney's Office had caused a listening device to be placed physically in petitioner's [Neyer's] office at Room 1001, 22 West 48th Street, in the City of New York," without the knowledge or consent of the petitioner and that this device was utilized by the New York City Police Department and the New York County District Attorney's Office to overhear conversations held by Neyer and other persons in his office. It is further alleged that this eavesdropping was carried out under the guise of an order under Section 813–a of the Code of Criminal Procedure of the State of New York. It is also asserted in the same petition that the defendant Harry Neyer is an attorney and that the premises upon which the eavesdropping device was installed were his law office.

In the proceeding upon the motion to remand, the affidavit of Moses L. Kove, attorney for Harry Neyer, the defendant above named, does not state any facts with respect to the alleged eavesdropping proceeding.

### CHARLES DUKE, also known as CHARLES KAMINETSKY

In the petition of Charles Duke, also known as Charles Kaminetsky, for removal of the above proceeding to this court he stated that his civil rights have been violated "in that the District Attorney's Office of New York County has invaded his privacy, searched unreasonably, has searched generally in a hunt for evidence, has trespassed on the premises of the Petitioner, *has trespassed upon premises other than those of the Petitioner*, but to which the Petitioner had right of entry \* \* \*." (Italics supplied) Duke also stated that he learned during other proceedings in People v. Berger that on or about April 10, 1962 the District Attorney's Office obtained an order pursuant to Section 813–a of the Code of Criminal Procedure of the State of New York for the installation of an eavesdropping device in the office of Harry Neyer, an attorney (one of the other defendants herein); that certain conversations between Neyer and Harry Steinman (another defendant), who was legally upon the said premises, were overheard by means of this eavesdropping device and that these conversations supplied leads by which the District Attorney was able to identify Harry Steinman by name and address.

The next step, according to Duke, was that on June 12, 1962 an eavesdropping device, pursuant to a similar order, was installed in Room 801, 15 East 48th Street, New York City, the private office of Harry Steinman, and that conversations in which the petitioner Duke was alleged to participate were overheard by these means. Duke also alleges upon information and belief that similar installations were made in the office of one Sam Berger (another defendant herein) and that conversations in which petitioner Duke was alleged to have participated were likewise overheard.

In the affidavit of Albert J. Krieger, attorney for Duke, submitted in opposition to the motion of the State to remand, no further facts are stated. The affidavit merely refers the court to the petition for removal which was incorporated by reference.

### HARRY STEINMAN

In the petition of Harry Steinman, one of these defendants, by which he sought removal to this court, he contends that the District Attorney's Office invaded his privacy, etc. and trespassed on his premises through an order dated on or about April 10, 1962 pursuant to Section 813–a of the Code of Criminal Procedure of the State of New York by the installation of an eavesdropping device in the office of Harry Neyer, an attorney, at Room 1001, 22 West 48th Street, New York City, and that conversations between Neyer and himself were overheard by this means; that thereafter, on or about June 12, 1962, as a further step, pursuant to another similar order, an eavesdropping device was installed in Room 801, 15 East 48th Street, New York City, the private office of Petitioner Harry Steinman. Steinman also refers to a similar installation in the office of one Sam Berger, as a result of which conservations in which petitioner was alleged to have participated were likewise overheard.

The affidavit of Albert J. Krieger, submitted in opposition to this motion to remand, incorporates the petition for removal but supplies no important additional factual information.

### SAM BERGER

In the petition of Sam Berger for removal to this court he states that the District Attorney's Office on or about April 10, 1962 obtained an order pursuant to Section 813–a of the Code of Criminal Procedure of the State of New York for the installation of an eavesdropping device in the office of one Harry Neyer, an attorney, at Room 1001, 22 West 48th Street, New York City, and that thereby certain conversations between Neyer and Steinman were overheard; that this in turn supplied information by which the District Attorney was able to identify Harry Steinman and that on or about June 12, 1962,

as a result of similar procedure, a device was installed in Harry Steinman's office, Room 801, 15 East 48th Street, New York City, and that here petitioner's conversations were overheard.

In the affidavit of Gilbert S. Rosenthal, attorney for defendant Sam Berger, submitted in opposition to the motion to remand, a similar but less complete statement of the facts is inserted.

## THE STATUTES

*Title 28 U.S.C. § 1443:*

"Civil rights cases

"Any of the following civil actions or criminal prosecutions, commenced in a State court may be removed by the defendant to the district court of the United States for the district and division embracing the place wherein it is pending:

"(1) Against any person who is denied or cannot enforce in the courts of such State a right under any law providing for the equal civil rights of citizens of the United States, or of all persons within the jurisdiction thereof;

"(2) For any act under color of authority derived from any law providing for equal rights, or for refusing to do any act on the ground that it would be inconsistent with such law. June 25, 1948, c. 646, 62 Stat. 938."

*Title 42 U.S.C. § 1983:*

"Civil action for deprivation of rights

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. R.S. § 1979."

*New York Code of Criminal Procedure § 813–a:*

"Ex parte order for eavesdropping

"An ex parte order for eavesdropping as defined in subdivisions one and two of section seven hundred thirty-eight of the penal law may be issued by any justice of the supreme court or judge of a county court or of the court of general sessions of the county of New York upon oath or affirmation of a district attorney, or of the attorney-general or of an officer above the rank of sergeant of any police department of the state or of any political subdivision thereof, that there is reasonable ground to believe that evidence of crime may be thus obtained, and particularly describing the person or persons whose communications, conversations or discussions are to be overhead [sic] or recorded and the purpose thereof, and, in the case of a telegraphic or telephonic communication, identifying the particular telephone number or telegraphline involved. In connection with the issuance of such an order the justice or judge may examine on oath the applicant and any other witness he may produce and shall satisfy himself of the existence of reasonable grounds for the granting of such application. Any such order shall be effective for the time specified therein but not for a period of more than two months unless extended or renewed by the justice or judge who signed and issued the original order upon satisfying himself that such extension or renewal is in the public interest. Any such order together with the papers upon which the application was based, shall be delivered to and retained by the applicant as authority for the eavesdropping authorized therein. A true copy of such order shall at all times be retained in his possession by the judge

or justice issuing the same, and, in the event of the denial of an application for such an order, a true copy of the papers upon which the application was based shall in like manner be retained by the judge or justice denying the same. As amended L.1958, c. 676, eff. July 1, 1958."

## PEOPLE v. GROSSMAN

Since the argument of the present motions, Mr. Justice Nathan R. Sobel in the Supreme Court of the State of New York, Kings County, has handed down his decision in a similar case entitled, People v. Grossman, Sup., 257 N.Y.S.2d 266.

In that case Mr. Justice Sobel stated: "The *principal* issue (one not heretofore decided by an appellate court) presented by these motions to suppress (Code Cr.Proc. § 813–c) and to dismiss the indictment, is: *'May an ex parte order for eavesdropping (C.C.P . § 813– a) serve the function of a search warrant under the Warrant Clause of the Fourth Amendment to authorize a physical invasion (trespass) upon a constitutionally protected area in a "search" for conversations?'"* (p. 269 of decision) Subsequently Justice Sobel declared: "Therefore the main constitutional issue upon which this decision, I expect, will turn is—*'May a search for conversations or verbal statements, which constitute evidence only of guilt, be constitutionally authorized under the Fourth and Fifth Amendments?'"* (p. 279 of decision)

On page 283 the opinion stated:

"It seems absolutely clear from the foregoing authorities that a search and seizure of *tangibles* which are *mere evidence* and a search and seizure of *intangibles* in the nature of conversations or verbal statements would violate the Fourth and Fifth Amendments. It follows that no State statute could authorize a violation of the United States Constitution. To the extent that sections 792 and 813–a of the Code of Criminal Procedure purport to do so these statutes are unconstitutional.

"Section 813–a of the Code of Criminal Procedure does not, for it could not, violate the Fourth and Fifth Amendments. It does not by its terms authorize eavesdropping *by means of an unlawful physical invasion or intrusion upon a constitutionally protected area.* Indeed the eavesdropping orders in issue do not in specific terms (see Hearing minutes, P. Ex.'s 1 & 4) authorize any *trespass into the premises at all.* But insofar as any statute or court order attempts to authorize such *physical invasion or intrusion* it would be unconstitutional (People v. Cahan, 44 Cal.2d 434, 282 P.2d 905, 50 A.L.R.2d 513; People v. Tarantino, 45 Cal.2d 590, 290 P. 2d 505)."

After an extensive consideration of the facts and the law, Mr. Justice Sobel recorded his findings of fact and conclusions of law, as follows:

"For the purpose of a record, I summarize my findings of fact and conclusions of law.

"1. I find that the orders authorizing the 'bugs' at premises 446 Coney Island Avenue and at 1253–65 Street were not based on 'probable cause' as required by the Fourth Amendment.

"2. I find that such orders did not meet the requirements of the Fourth Amendment with respect to specificity of description of the intangible product, i. e., conversations or verbal statements, to be 'seized'.

"3. I find that the manner of executing such orders violated the Fourth Amendment in that the orders *did* not, because they *could* not, authorize a physical invasion or intrusion upon a constitutionally protected area.

"4. I find that the search warrant dated July 24, 1963 was issued without probable cause since the supporting affidavit was based sole-

ly on evidence unconstitutionally 'seized'.

\* \* \* \* \* \*

"I summarize my conclusions on the constitutional issues.

## "I.

"It is emphasized that only such eavesdropping (Penal Law, § 738) *which violates the Fourth Amendment* is determined herein to be unconstitutional. The Fourth Amendment is violated when such eavesdropping is effectuated (1) by means of a *physical invasion* or *intrusion*, (2) upon a constitutionally protected area. The Fourth Amendment is not violated when such eavesdropping is effectuated *without* a trespass (cf. People v. Dinan, 11 N.Y.2d 350, 229 N.Y.S.2d 406, 183 N.E.2d 689).

"It is not the business of a court of first instance to indulge in predictions and the question of the constitutionality of other kinds of eavesdropping, i. e., *without a physical trespass*, is at this stage wide open. But it is important to note that specific issues have been considered and decided by closely divided courts. It should be noted that in Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381 [10 L.Ed.2d 462], supra three of the Justices (see Mr. Justice Brennan's dissent concurred in by Justices Douglas and Goldberg) believed that *all* electronic eavesdropping including wiretapping is condemned by the Privacy Clause (first clause) of the Fourth Amendment. And the Chief Justice believed that except as used in Lopez, all *other* types of eavesdropping are either condemned by the Fourth Amendment or should be condemned by the Court in the exercise of its supervisory authority. In New York, the Chief Judge and Judges Fuld and Burke believed that the 'imperative of judicial integrity' required exclusion of all *wiretap* evidence. (People v. Dinan, supra)

## "II.

"I rule that a court order issued under the authority of section 813–a of the Code of Criminal Procedure may not serve as a 'search warrant' under the Warrant Clause of the Fourth Amendment to validate an intrusion or invasion into a constitionally protected area. I base such ruling on the many cases discussed and cited under Part III, subd. 3, which hold that a 'search warrant' may not constitutionally authorize a search for or seizure of *mere evidence* in the nature of conversations or verbal statements.

\* \* \* \* \* \*

"The prime purpose of the Fourth Amendment is to deter unlawful invasions of the right of privacy by police and prosecutors. We in the Court see only the 'successful' eavesdroppings, those in which the police succeed in obtaining evidence of guilt. We do not know nor can we estimate how many 'unsuccessful' invasions of the privacy of innocent persons occur each day.

"Great secrecy surrounds the issuance of such orders. On balance, nothing within the experience of criminal law enforcement justifies this secrecy. It has been proposed that 'orders' for electronic eavesdropping be made a matter of 'ultimate' record so that the 'failures' as well as the 'successes' be made available for statistical study. With such a record it could easily be established whether or not eavesdropping is essential to law enforcement. (See Report of Hearings, Senate Sub. Comm. on Constitutional Rights, 1958, p. 206; 1959, p. 521; see also Chairman Henning's conclusions, Minn.L.Rev. April 1960, p. 816.)

\* \* \* \* \* \*

"The motions are in all respects granted as indicated herein." (pp. 286, 287 of the opinion)

## CONCLUSIONS

In view of Mr. Justice Sobel's opinion, it does not appear that the petitioners are denied or cannot enforce in the courts of the State of New York a right under any law providing for the equal civil rights of citizens of the United States (Title 28 U.S.C. § 1443 above set forth). There is thus no showing that the petitioners, the defendants in the state criminal proceedings, cannot enforce their respective constitutional rights by existing state remedies and procedures.

The pre-trial motions to suppress made by defendants in the State Court were referred to the trial part on June 8, 1964, on the ground that they were made prematurely (see People v. Golly, 43 Misc.2d 122, 250 N.Y.S.2d 210 (1964)), which is not equivalent to a determination on the merits. Such motions to repress were in effect authorized in New York by an amendment to the Code of Criminal Procedure, Title II–B, Of Motions For Return of Property or For the Suppression of Evidence Alleged To Have Been Obtained as The Result of An Unlawful Search and Seizure, L. 1962, Chapter 954, § 1, eff. April 29, 1962.

As Chief Judge Lumbard of the Second Circuit said in 1963: "Federal courts of equity have always been loathe to restrain criminal prosecutions by states, even on constitutional grounds, where all constitutional issues can be decided in the first instances as a matter of course by the state courts. Douglas v. [City of] Jeannette, 319 U.S. 157, 63 S.Ct. 877, 87 L.Ed. 1324 (1943)." Moss v. Hornig, 314 F.2d 89, 91 (2 Cir. 1963). See also Gibson v. Mississippi, 162 U.S. 565, 585, 16 S.Ct. 904, 40 L. Ed. 1075 (1896); State of North Carolina v. Jackson, 135 F.Supp. 682 (M.D. N.C.1955). Cf. Pugach v. Dollinger, 277 F.2d 739 (2 Cir. 1960), aff'd 365 U.S. 458, 81 S.Ct. 650, 5 L.Ed.2d 678 (1961).

This court does not presume that the New York courts in determining the legality of other searches and seizures through electronic eavesdropping will not be controlled by federal constitutional standards. See Clinton v. Va., 377 U. S. 158, 84 S.Ct. 1186, 12 L.Ed.2d 213 (1964). As Mr. Justice Matthew M. Levy recently said: "[I]n my view, a State court judge is as obligated to support the Constitution of the United States as is a Federal Judge." See Matter of the Petition of Orans, Sup., 257 N.Y.S.2d 839.

Accordingly, the motions to remand are granted.

Settle separate orders upon notice.